* * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as: *Page 2 
 STIPULATIONS
1. It is stipulated that an employment relationship existed between the Plaintiff-Employee and Defendant-Employer at all relevant times; that there was insurance coverage at all relevant times; that all parties are properly before the Commission and that the Commission has jurisdiction over the parties and subject matter.
2. It is stipulated that all parties have been correctly designated and there is no question of misjoinder or nonjoinder of parties.
3. No party is appearing in a representative capacity.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was fifty-eight (58) years old. She has a high school education and received her certification as a certified nursing assistant (CNA) in 1991, after receiving training at Rutledge College in Durham, North Carolina.
2. Plaintiff has an extensive work history going back to her childhood, when she worked in tobacco. Plaintiff worked for the Veterans' Administration (VA) Hospital in 1967, and for the American Tobacco Company for many years. From 1992 until 2003, Plaintiff worked at The Forests at Duke Retirement Community in a full-time CNA position. During 2003, Plaintiff also worked part-time for Geri Care where she provided care for her mother as a part of her job duties. *Page 3 
3. Plaintiff began working for Defendant-Employer in early September 2004. As an employee of Defendant-Employer, Plaintiff was paid to provide seven hours of care per day for her mother. Plaintiff's workday was from 7:00 a.m. to 2:00 p.m., five days a week for a total of thirty-five hours per week. Plaintiff was paid $8.00 per hour.
4. As of October 29, 2004, Plaintiff's mother weighed approximately two hundred (200) pounds, suffered from dementia and many other health problems, and could not walk or care for herself. Plaintiff's job duties for Defendant-Employer included bathing her mother, giving her medications, using a Hoyer lift to get her out of bed, dressing her, cooking her meals, assisting her with eating, and doing laundry and housekeeping.
5. On October 29, 2004, Plaintiff began her work shift at 7:00 a.m. She had to get her mother ready to be transported to an appointment. Plaintiff bathed and dressed her mother in bed and then rolled her over to place the Hoyer lift pad under her in order to get her out of bed. Plaintiff then lowered the bedside rails, guided the Hoyer lift into position, hooked the pad to the lift, and pushed her mother's wheelchair into place. Plaintiff then manually pumped the Hoyer lift a few times in order to raise her mother out of bed, guided her into place over the wheelchair, and then lowered the lift to place her in the wheelchair. Plaintiff had to get behind her mother and pull her from the back of her pants to get her into a comfortable position, once in the wheelchair. Plaintiff then had to roll the Hoyer lift pad from under her mother by partially lifting and rocking her from side to side. After getting the pad from under her mother, Plaintiff pushed her back into place in the wheelchair, bent down to put her mother's feet in a comfortable position on the foot rests and to unlock the wheelchair and then pushed her mother into the dining area for breakfast. Plaintiff then bent down to take her mother's feet off the foot rests and to lock the wheelchair and then she fed and gave her mother medication. *Page 4 
6. During the entire process of getting her mother out of bed, preparing her for breakfast, preparing breakfast, feeding her and giving her medication, Plaintiff was standing, bending, squatting or otherwise placing her body in different positions as she partially lifted, rolled, pushed and pulled her mother to dress her and to position her in the wheelchair to get her ready for breakfast and an appointment. Plaintiff bent over each time she locked or unlocked the wheelchair.
7. After feeding her mother breakfast on October 29, 2004, Plaintiff unlocked the wheelchair and began to push her mother in the wheelchair to the elevator in order to go to the lobby of their apartment building and wait on transportation for her mother to an appointment. As she was pushing her mother in the wheelchair, Plaintiff felt some back pain that was not severe.
8. When she and her mother reached the lobby, Plaintiff bent down to lock the wheelchair, then stood up and sat down for a short period of time. When Plaintiff attempted to stand up again, she felt sharp, excruciating pain in her lower back. The time was approximately 8:50 a.m.
9. On October 29, 2004, Plaintiff called her supervisor, Aaron Milligan, to report that she was injured. Mr. Milligan told Plaintiff that she would not receive workers' compensation.
10. On October 30, 2004, Plaintiff was experiencing severe back pain and had her sister take her to the emergency room at Durham Regional Hospital, where Plaintiff was diagnosed with a lumbar strain and given a prescription for Ibuprofen. Still in pain, Plaintiff returned to the emergency room on November 2, 2004, and was given a prescription for Percocet. Plaintiff had difficulty getting medical treatment so she called the Department of *Page 5 
Social Services for assistance and was advised to apply for Medicaid. Her Medicaid application was subsequently approved.
11. Although Mr. Milligan had told Plaintiff that Defendant-Employer would not provide workers' compensation benefits, Defendant-Employer nonetheless directed Plaintiff to go to Concentra Medical Center (Concentra) in Durham for further care. Plaintiff first went to Concentra on November 2, 2004, and had three more visits thereafter. The providers at Concentra diagnosed Plaintiff with a lumbar strain and recommended physical therapy, which Defendant refused to authorize. Plaintiff was given restrictions of no repetitive lifting over fifteen (15) pounds, no pushing and/or pulling of over thirty (30) pounds and no reaching above her shoulders.
12. Plaintiff has been pursued by a collection agency for payment of the Concentra bills for the medical treatment Defendant directed her to seek.
13. On December 1, 2004, Plaintiff saw her general practitioner, Dr. M. Ambrose at Lincoln Community Health Center. She was prescribed medication and referred to a behavioral health therapist because she expressed feelings of being overwhelmed and depressed due to her pain, lack of health insurance for medical treatment and having no source of income. Dr. Ambrose subsequently referred Plaintiff to the North Carolina Division of Vocational Rehabilitation Services and through that agency she was referred to Triangle Orthopaedics for further medical treatment.
14. On February 15, 2005, Plaintiff saw Dr. David Musante with Triangle Orthopaedic Associates, P.A. (Triangle Orthopaedic). Plaintiff gave a history of being involved in a motor vehicle accident approximately nine (9) years earlier, but she had been pain free until she injured her back at work on October 29, 2004. Her main complaint was low back pain, *Page 6 
which had not abated since her injury on October 29, 2004. Dr. Musante performed a complete physical examination and found Plaintiff to be neurologically intact in terms of motor, sensory function and reflex function, but she had significant tenderness in her lower back, and difficulty with flexion and extension of her lumbar spine. Dr. Musante diagnosed Plaintiff with lumbar pain with possible internal disc derangement, ordered an MRI, prescribed physical therapy and referred her to Dr. Leslie R. Phillips, one of the psychologists in his practice, for a psychological consultation.
15. On March 29, 2005, Plaintiff followed up with Dr. Musante, who noted that Plaintiff's MRI showed evidence of injury to the L4-5 disk. The other areas looked unremarkable. Dr. Musante diagnosed symptomatic degenerative disk disease at L4-5. Dr. Mustane testified that Plaintiff's complaints of back pain were compatible with the injuries he found through diagnostic testing and examination. Dr. Musante felt that Plaintiff was not a surgical candidate because of her depressed mood and referred her for pain management. Dr. Musante also recommended a trial epidural steroid injection and that Plaintiff continue with anti-inflammatories and home exercises. He placed Plaintiff on a fifteen (15) pound lifting restriction with avoidance of prolonged sitting greater than thirty minutes. He directed Plaintiff to return for treatment as needed.
16. Dr. Musante is an orthopedic surgeon who has completed a spine fellowship and he is accepted as an expert in orthopedic surgery. Dr. Musante opined and the Full Commission finds as fact that Plaintiff's October 29, 2004 injury aggravated Plaintiff's underlying disc degeneration at L4-5.
17. On May 13, 2005, Plaintiff had a pain management evaluation with Dr. Robert J. Wilson at Triangle Orthopaedic, and on June 28, 2005, Plaintiff underwent an epidural steroid *Page 7 
injection. Dr. Wilson is board certified in physical medicine and rehabilitation with a subspecialty in pain medicine. He diagnosed Plaintiff with non-specific mechanical back pain and also found that Plaintiff had a fair degree of stress and depression.
18. At a July 11, 2005 follow-up, Dr. Wilson found that Plaintiff's back pain was significantly better. However, at a July 26, 2005 follow-up, Plaintiff's back pain was worse. Dr. Wilson treated Plaintiff through October 11, 2005, and was of the opinion that Plaintiff was disabled from work at the time he began his treatment as well as when he last treated her.
19. Dr. Wilson did not have an opinion on whether Plaintiff's injury aggravated her psychological condition.
20. On May 23, 2005, Plaintiff saw Dr. Leslie R. Phillips, a psychologist at Triangle Orthopaedic, who noted that Plaintiff was experiencing persistent pain with impairment of her function. Dr. Phillips interviewed Plaintiff, administered the Owestry Disability Index and reviewed her medical records. Plaintiff had a high level of day-to-day functional impairment secondary to her pain as well as her mood disturbance. Dr. Phillips diagnosed Plaintiff with a major depressive disorder, single episode, which was moderately severe. This diagnosis covered Plaintiff's psychosocial stressors, including the stress of being the caregiver for her ailing, debilitated mother, her financial stressors and the stress associated with being in persistent pain.
21. At the time Plaintiff began treatment with Dr. Phillips she was taking medication for depression and anxiety as well as Oxycodone for pain, Flexeril for muscle relaxation, Motrin as an anti-inflammatory and also various medicines for medical conditions unrelated to her injury.
22. Dr. Phillips was of the opinion that the depression and anxiety for which he treated Plaintiff were due in significant part to her pain resulting from her October 29, 2004 *Page 8 
injury and that if the injury did not cause her depression, the injury probably aggravated the depression. Dr. Phillips was aware that Plaintiff had traumatic incidents in her childhood, but did not document these incidents in detail. Dr. Phillips testified that he did not have any medical records indicating that Plaintiff had received treatment or had been diagnosed with depression prior to the injury. Dr. Phillips, in response to Defendant's questioning, testified that if Plaintiff's medical records reflect a long history of treatment for depression, he would agree that he could not state whether her depression was aggravated or worsened by her injury. The Full Commission finds as fact that the evidence of record does not contain any records of treatment by Plaintiff for depression or anxiety prior to her injury of October 29, 2004. Plaintiff testified, however, that she might have been prescribed an anti-depressant some years ago that she did not take.
23. Although Plaintiff had several emotionally traumatic experiences earlier in her life and may have experienced some depression, by self-report, prior to October 29, 2004, she was still able to work full time. She had endured the stress of taking care of her ailing mother for four (4) years, without seeking psychological or psychiatric treatment prior to her injury. Plaintiff believed that at least part of the reason she was able, prior to October 29, 2004, to deal with her earlier traumas in life was that she was always able to focus elsewhere by working, walking or doing other activities and thus keeping her mind relatively clear. Plaintiff's testimony concerning her psychological state prior to her injury is found to be credible.
24. Prior to the morning of October 29, 2004, aside from an automobile accident in 1995, Plaintiff had never had any significant pain in her lower back. At 7:00 a.m. on October 29, 2004, Plaintiff had no back pain, and she had not suffered back pain for years. On October 29, 2004 during the period from 7:00 a.m. to 8:50 a.m., Plaintiff performed a continuous series of *Page 9 
work duties consisting of lifting, pushing, pulling, bending, standing, squatting, and moving while sometimes in award positions, which aggravated her underlying disc degeneration at L4-5 and significantly contributed to the development of her low back pain.
25. Dr. Phillips is a psychologist with a specialty in chronic pain management and he is accepted as an expert herein. Dr. Phillips opined and the Full Commission finds as fact that the pain resulting from Plaintiff's October 29, 2004 back injury probably aggravated Plaintiff's pre-existing, non-disabling depression.
26. Plaintiff's October 29, 2004 low back injury arose out of and in the course of her employment with Defendant-Employer and her injury was the direct result of a specific traumatic incident of work assigned to her by Defendant-Employer. Plaintiff's injury occurred during a judicially cognizable period of time. During the time between 7:00 a.m. and 8:50 a.m., Plaintiff had been partially lifting, pushing and pulling her 200 lb. patient-mother, and also bending, squatting, standing and moving while sometimes in awkward positions. Specifically, Plaintiff first experienced some back pain while pushing her mother in a wheelchair to the lobby at approximately 8:50 a.m. Immediately before pushing her mother in the wheelchair to the lobby, Plaintiff had been required to bend over to place her mother's feet on the foot rests and to unlock the wheelchair. Upon arriving in the lobby, Plaintiff bent over to lock her mother's wheelchair and sat down in a chair. Plaintiff felt a sharp, excruciating pain when getting up from the chair in the lobby after sitting a few minutes to wait for her mother's transportation. This onset of back pain, which occurred contemporaneously with getting up from the chair could have alone constituted a specific traumatic incident. The lifting, pushing, pulling, bending, squatting, standing and moving while sometimes in awkward positions which Plaintiff performed from 7:00 a.m. to 8:50 a.m. on October 29, 2004, occurred during a cognizable period of time and her *Page 10 
resulting back injury was a direct result of a specific traumatic incident of the work assigned. Plaintiff's injury due to a specific traumatic incident aggravated her underlying disc degeneration at L4-5.
27. Even though Plaintiff can identify a specific instance in time when her back began to hurt and experiencing an onset of back pain while pushing her mother in a wheelchair or getting up from the chair alone could constitute an injury due to a specific traumatic incident, Plaintiff has shown by the greater weight of the evidence that her back injury occurred as a result of a series of contemporaneous events which culminated with getting up from the chair. Plaintiff has also shown that these events occurred during a cognizable period of time and that her injury was a direct result of a specific traumatic incident of the work assigned to her by Defendant-Employer.
28. Plaintiff's injury required medical treatment and resulted in disability. Dr. Musante was of the opinion that the treatment he provided to Plaintiff was reasonably required to provide relief and lessen Plaintiff's disability.
29. As a direct result of the pain and other stressors Plaintiff suffered due to her back injury, she probably aggravated her non-disabling, pre-existing depression, causing the need for medical treatment. Dr. Musante opined that Plaintiff may have had some depression before, but the October 29, 2004 injury certainly could have aggravated it.
30. With respect to her disability, Plaintiff still suffers from constant low back pain and remains under Dr. Musante's fifteen (15) pound lifting restriction. Although Dr. Musante released Plaintiff to return to work, he then referred her to pain management, which was provided by Dr. Wilson. Dr. Wilson opined that Plaintiff has been medically unable to work in any capacity since her injury and that Plaintiff's physical limitations caused by her back pain, in *Page 11 
combination with her anxiety and depression which were aggravated by her injury, render her incapable of working, even under the restrictions given. Plaintiff has not worked since sustaining her October 29, 2004 injury.
31. The Full Commission gives greater weight to the opinion of Dr. Wilson on Plaintiff's disability and finds that Plaintiff has been medically unable to work in any capacity since her injury and that Plaintiff's physical limitations caused by her back pain in combination with her anxiety and depression which were aggravated by her injury, render her incapable of working, even under the restrictions given.
32. As a CNA, Plaintiff has not provided skilled nursing care in the past and her work history prior to becoming a CNA has been in unskilled positions. Plaintiff is currently unable, because of her physical and mental condition and limitations caused by her October 29, 2004 injury, to perform the job duties required in her previous occupation as a CNA. Also, due to her age, limited education, and past vocational history in combination with her physical and mental conditions and limitations, it would be futile for her to seek suitable employment without vocational rehabilitation assistance and possibly retraining. Plaintiff has already applied for and received assistance from the North Carolina Division of Vocational Rehabilitation Services.
33. As a result of her injury, Plaintiff needs future medical treatment and vocational assistance. Dr. Musante continues to recommend the treatment modalities that he recommended in his February 2005 and March 2005 consultations with Plaintiff.
34. Plaintiff has received medical treatment through Medicaid and the North Carolina Division of Vocational Rehabilitation Services. Defendant is obligated to reimburse these entities for treatment they financed that should have been paid through Defendant's workers' compensation coverage. *Page 12 
35. Defendant's defense of this matter has not been without reasonable ground. However, Defendant's refusal to pay for the four visits that Plaintiff made to Concentra based on their direct referral, beginning on November 2, 2004, is in violation of N.C. Gen. Stat. § 97-90(e) and Defendant shall pay a 10% penalty on all medical bills owed to Concentra.
36. Plaintiff's average weekly wage with Defendant-Employer was $280.00 per week. The Form 22 wage chart submitted herein shows that Plaintiff was paid in full for October 29, 2004.
37. As a result of her injury on October 29, 2004, Plaintiff is entitled to temporary total disability compensation beginning October 30, 2004, and continuing until further Order of the Commission at the rate of $186.68 per week.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff has established that, on October 29, 2004, she suffered a compensable injury to her back arising out of and in the course and scope of her employment as a direct result of a specific traumatic incident of the work assigned to her by Defendant-Employer. N.C. Gen. Stat. § 97-2(6). Plaintiff's injury occurred during a judicially cognizable period of time. Goforth v. K-Mart Corp., 167 N.C. App. 618,605 S.E.2d 709 (2004) ("The term 'judicially cognizable' requires '"a showing by plaintiff which enables the Industrial Commission to determine when, within a reasonable period, the specific injury occurred.'"); Richards v. Town of Valdese, 92 N.C. App. 222, 225,374 S.E.2d 116, 119 (1988). ("Back injuries that occur gradually, over long periods of time, are not specific traumatic incidents; however, we believe that events which *Page 13 
occur contemporaneously, during a cognizable time period, and which cause a back injury, do fit the definition intended by the legislature.")
2. Plaintiff has established that as a direct and natural consequence of her injury to her back, she developed and/or aggravated her pre-existing, non-disabling anxiety and depression to such a degree that she required psychological treatment and these conditions contributed to her disability. N.C. Gen. Stat. § 97-2(9).
3. Plaintiff has been, and continues to be, totally disabled since October 29, 2004. As a result of her physical and mental limitations resulting from her injury, Plaintiff is medically incapable of working in any employment at this time. Additionally, due to her age, limited education, limited training, past history of working in unskilled jobs or jobs requiring heavy lifting, in combination with her physical and mental condition and limitations, it would be futile for Plaintiff to seek suitable employment on her own without vocational rehabilitation assistance and possibly retraining. Plaintiff has proven that she remains temporarily, totally disabled. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993); N.C. Gen. Stat. §§ 97-29 and 97-25.
4. Plaintiff is entitled to receive from Defendant weekly temporary total disability compensation in the amount of $186.68 per week, from October 30, 2004, through the date of the hearing before the Deputy Commissioner and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to receive medical treatment, at Defendant's expense, for all conditions related to her compensable low back injury, including her resulting anxiety and depression, that will tend to effect a cure, provide relief or lessen her period of disability. Plaintiff is entitled to have Defendant pay all of the bills for treatment that Plaintiff has received *Page 14 
for her low back injury, anxiety and depression which have accrued since October 29, 2004 and any future medical treatment related to her compensable injury. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
6. Defendant acted in direct violation of N.C. Gen. Stat. § 97-90(e), in failing to pay for Plaintiff's four visits to Concentra beginning on November 2, 2004, after referring Plaintiff for treatment with Concentra. Defendant shall pay to Concentra the amount owed and a ten percent (10%) penalty on all amounts owed according to the Industrial Commission fee schedule. N.C. Gen. Stat. § 97-90(e)
7. Plaintiff is not entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 as Defendant had reasonable grounds for defending this claim.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to Plaintiff temporary total disability compensation at the rate of $186.68 per week beginning on October 30, 2004, and continuing until further Order of the Commission. For the period from October 30, 2004 through the present, Defendant shall immediately make a lump sum payment to Plaintiff of three-quarters of the back amount due Plaintiff and the other one-quarter of the back amount due Plaintiff shall be paid directly to Plaintiff's counsel as his accrued attorney's fee. Defendant shall hereafter, until further Order of the Commission, make weekly payments to Plaintiff at the weekly rate of $186.68, with every fourth check to go to Plaintiff's counsel as his attorney's fee. *Page 15 
2. Defendant shall pay the expenses for medical treatment Plaintiff has received as a result of her compensable low back injury and related anxiety and depression. Defendant shall also pay all of the bills for treatment that Plaintiff incurs in the future as a result of her compensable low back injury, anxiety and depression. To the extent that any of said bills have already been paid by Plaintiff or a third party, Defendant shall reimburse the payor(s) in full and/or satisfy the liens according to the Industrial Commission fee schedule. Defendant shall pay a ten percent (10%) penalty on the amount owed to Concentra.
3. Dr. Musante is hereby designated as Plaintiff's treating physician for her low back injury, and Dr. Phillips is hereby designated as Plaintiff's treating psychologist for her psychological condition and for her pain management needs.
4. Plaintiff's claim for attorney's fees under N.C. Gen. Stat. §97-88.1 is DENIED.
5. Defendant shall pay the costs.
6. If not already done, Defendant shall pay the following amounts, to the following physicians as expert witness fees: $285.00 to Dr. Wilson; $410.00 to Dr. Musante; and $210.00 to Dr. Phillips.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ PAMELA T. YOUNG COMMISSIONER *Page 16 
DISSENTING:
S/____________ BUCK LATTIMORE CHAIRMAN *Page 17